43 P.3d 76 (2002)
110 Wash.App. 905
STATE of Washington, Respondent,
v.
Byron Leslie GRENDAHL, Appellant.
No. 19713-1-III.
Court of Appeals of Washington, Division 3, Panel One.
April 4, 2002.
Janet G. Gemberling, Spokane, for Appellant.
*77 Kevin M. Korsmo, Andrew J. Metts, III, Deputy Prosecuting Attorneys, for Respondent.
KATO, J.
Byron Grendahl appeals his convictions for first degree robbery and possession of a controlled substance. He contends the court's jury instructions and the prosecutor's closing argument improperly stated the law on accomplice liability. We reverse the robbery conviction but affirm the drug possession conviction.
Richard Nauditt knocked down Billie Jean Lindhag and took her wallet as she was leaving the Jo-Ann Fabrics store in Spokane's Lincoln Heights Shopping Center on August 2, 2000. Mr. Nauditt ran to a nearby parked car in which Mr. Grendahl was waiting in the driver's seat. Meanwhile, Deborah Foster was driving past the store and saw Mr. Nauditt run to the passenger side of Mr. Grendahl's vehicle. Although Ms. Foster attempted to block the vehicle with her own, she testified the getaway vehicle had to "jockey around" the curb and left the area at "a high rate of speed." Report of Proceedings (RP) at 44-45. Aldon Eiland, who had stopped to help Ms. Lindhag and who had signaled Ms. Foster to try to stop the getaway vehicle, testified the car "squealed some rubber" as it left the parking lot. RP at 58-59. Ms. Foster got the car's license number and gave it to the police.
Ms. Lindhag's wallet (minus $25 in currency) was found several blocks away. Spokane police officers spotted the getaway car a few minutes later in a parking lot on East Sprague Avenue, approximately six to eight blocks outside the city limits. They arrested Mr. Grendahl for driving with a suspended license. A search of the car and Mr. Grendahl yielded four syringes and a small baggie containing heroin. Officers also found $25 in currency in Mr. Nauditt's pocket.
Mr. Grendahl was charged with first degree robbery (as an accomplice) and possession of a controlled substance. Mr. Nauditt pleaded guilty to second degree robbery and possession of a controlled substance, and he agreed to testify in Mr. Grendahl's trial.
At the trial, Mr. Nauditt testified it was his idea to go to the Jo Ann Fabrics store because he had heard there was a room where employees' purses were left unattended. However, Mr. Nauditt's testimony was unclear about what he had discussed with Mr. Grendahl. On one hand, he testified he told Mr. Grendahl he was going to go there "to just look around and see if everything would bebebe cool to do at a later time." RP at 92. And he repeatedly testified he did not tell Mr. Grendahl he planned to steal a purse that day. On the other hand, Mr. Nauditt also testified he planned to "go in there and take a purse and just come out." RP at 92.
Q I'm asking you, again, whether or not you recallwhether or not, prior to going into Jo-Ann Fabrics, if you had a discussion with Mr. Grendahl that would lead you to believe that he was aware that you were going in and that you might steal a purse or something else.
A Yes.
Q Is that "yes"?
A Yes.
RP at 96.
Mr. Grendahl testified in his own defense. He said Mr. Nauditt wanted to go to the shopping center to talk to somebody, and he waited in the car with the door open because the weather was hot. He testified Mr. Nauditt returned a few minutes later and did not appear in too much of a hurry. He said he had no idea Mr. Nauditt had committed robbery until they arrived at the parking lot on East Sprague and Mr. Nauditt admitted taking the wallet.
A jury found Mr. Grendahl guilty of both counts.
The dispositive issue is whether the robbery conviction must be reversed because the jury instructions and the prosecutor's closing argument misstated the law regarding accomplice liability.
The court instructed the jury:

INSTRUCTION NO. 4
To convict the defendant of the crime of robbery in the first degree, each of the *78 following elements of the crime must be proved beyond a reasonable doubt:
(1) That on or about the 2nd day of August, 2000, the defendant, acting as a principal or an accomplice, assisted in the unlawful taking of personal property from the person of Billie J. Lindhag or in the presence of Billie J. Lindhag;
(2) That the defendant or Richard E. Nauditt intended to commit theft of the property;
(3) That the taking was against Billie J. Lindhag's will by the defendant's or Richard E. Nauditt's use or threatened use of immediate force, violence or fear of injury;
(4) That force or fear was used by the defendant or Richard E. Nauditt to obtain or retaining possession of the property or to permit or overcome resistance to the taking;
(5) That in the commission of these acts or in immediate flight therefrom the defendant or Richard E. Nauditt inflicted bodily injury; and
(6) That the acts occurred in the State of Washington.
If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of ... guilty.
On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.[1]

INSTRUCTION NO. 5
A person who is an accomplice in the commission of the crime is guilty of that crime whether present at the scene or not.
A person is an accomplice in the commission of the crime if, with knowledge that it will promote or facilitate the commission of the crime, he or she either:
(1) solicits, commands, encourages, or requests another person to commit the crime; or
(2) aids or agrees to aid another person in planning or committing the crime.
The word "aid" means all assistance whether given by words, acts, encouragement, support, or presence. A person who is present at the scene and ready to assist by his or her presence is aiding in the commission of the crime. However, more than mere presence or knowledge of the criminal activity of another must be shown to establish that a person present is an accomplice.
RP at 195-97.
During closing argument, the prosecutor argued:
And you've got to [decide] whether or not Mr. Grendahl was an accomplice in that robbery.
Now, to get there, the instructions tell you very clearly that it doesn't have to be that he intended to commit a robbery. When you get those element instructions, you're going to find out that the issue was whether or not there was an intent to commit a theft by either Mr. Grendahl or Mr. Nauditt.... So, those elements talk about the intent to commit a theft, not the intent to commit a robbery, and that's critical.
RP at 235-36. The prosecutor continued:
If you find that Mr. Grendahl was aware that there was a theft that was going to take place or even the possibility of a theft that was going to take place or that he drove him there in furtherance of that and he drove him away from the scene in furtherance of that, then, that's more than just mere presence and mere knowledge. It makes him an accomplice.
RP at 240. The prosecutor continued:
He never intended there be a robbery. He intended there to be a theft. He intended the theft to get more money to get more drugs to continue the lifestyle he was leading.
....
... The robbery chargethe robbery itself is uncontested. The question is:

*79 Was there knowledge of an intent to make a theft to steal a purse to get more money to buy more drugs or not?
RP at 248-49. Finally, the prosecutor argued:
This was a neighborhood shopping center that two heroin addicts came cruising in in a borrowed car with, basically, with no money on them after they'd taken just a hit and they were looking for purses to steal. That ended up in a robbery. I ask that you bring back verdicts of guilty on both counts.
RP at 268.
A person is guilty of a crime as an accomplice if, "[w]ith knowledge that it will promote or facilitate the commission of the crime, he (i) solicits, commands, encourages, or requests such other person to commit it; or (ii) aids or agrees to aid such other person in planning or committing it." RCW 9A.08.020(3)(a).
In State v. Roberts, 142 Wash.2d 471, 14 P.3d 713 (2000) (filed about a month after the trial here), the Supreme Court clarified the issue whether an accomplice bears the risk that the principal may commit a crime greater than planned:
[A]n accomplice need not have knowledge of each element of the principal's crime in order to be convicted under RCW 9A.08.020. General knowledge of "the crime" is sufficient. Nevertheless, knowledge by the accomplice that the principal intends to commit "a crime" does not impose strict liability for any and all offenses that follow. Such an interpretation is contrary to the statute's plain language, its legislative history, and supporting case law.
Roberts, 142 Wash.2d at 513, 14 P.3d 713; see State v. Stein, 144 Wash.2d 236, 245-46, 27 P.3d 184 (2001); State v. Cronin, 142 Wash.2d 568, 579, 14 P.3d 752 (2000).
Roberts is directly on point. Instruction 5 permitted the jury to convict Mr. Grendahl of robbery as an accomplice if he assisted in the unlawful taking of Ms. Lindhag's wallet, even if he or Mr. Nauditt merely intended to commit theft. Instruction 4 (the "to convict" instruction) imposed accomplice liability for a crime (robbery) when the defendant's intent was to commit a different crime (theft). Instruction 4 thus impermissibly relieved the State of the burden of proving an element of the crime of robbery.[2]
The error is presumed to be prejudicial and requires reversal "unless it affirmatively appears to be harmless." Stein, 144 Wash.2d at 246, 27 P.3d 184. The State does not contend the instruction was harmless, nor could it in light of the prosecutor's repeated argument that Mr. Grendahl was guilty of robbery if he merely intended that Mr. Nauditt commit a theft. Mr. Grendahl's robbery conviction must be reversed.
The drug possession conviction is affirmed; the robbery conviction is reversed and the case is remanded for a new trial.[3]
WE CONCUR: BROWN, C.J., and SWEENEY, J.
NOTES
[1] The instruction was based on 11 WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 37.02, at 478-79 (2d ed.1994).
[2] The State points out that Instruction 5 (defining accomplice) properly used the phrase "the crime" rather than the phrase "a crime," which the Supreme Court rejected in Roberts. However, Instruction 4 clearly violated the ruling of Roberts and its progeny.
[3] Mr. Grendahl's pro se contentions are without merit. Mr. Grendahl also contends the insufficiency of evidence to convict him of robbery bars a retrial. See State v. Hardesty, 129 Wash.2d 303, 309, 915 P.2d 1080 (1996). However, applying the appropriate standard, see State v. Green, 94 Wash.2d 216, 220-22, 616 P.2d 628 (1980), we conclude the evidence presented permits a reasonable inference that Mr. Grendahl knew Mr. Nauditt planned to commit a theft.