[No. 23148-4-II.   Division Two.   April 12, 2002.]

THE STATE OF WASHINGTON, *Respondent*, v. JEFFREY D. FLORECK, *Appellant*.

136

*Thomas E. Doyle, Robert M. Quillian,* and *Patricia A. Pethick,* for appellant (appointed counsel for appeal).

*Edward G. Holm, Prosecuting Attorney,* and *Steven C. Sherman* and *Robert A. Lund, Deputies,* for respondent.

ARMSTRONG, J. — A jury found Jeffrey Floreck guilty of a series of storage unit burglaries. The State introduced a taped statement by Floreck's accomplice implicating Floreck. At trial, the accomplice said that she lied in the statement and that she could not remember what she said on the tape. The court found her unavailable as a witness and admitted her taped statement. The State also presented evidence gathered in a warrantless search of a locked room in Floreck's brother's home. His brother consented to the search, but Floreck claims he lacked authority to do so. We hold that the search was lawful, but that the court erred in admitting the accomplice's taped statement. We reverse and remand for a new trial.

## FACTS

Officers arrested Jennifer Mazza for a series of storage unit burglaries. In a taped statement, Mazza confessed that

she and Floreck committed the burglaries and described them in detail.

The police searched Floreck's home and truck after obtaining warrants for both. They also searched his brother Brady Floreck's home, with Brady's consent. Floreck had put a lock on the door of a room he used at Brady's house. Brady was surprised that Floreck had put a lock on the door, and he asked police to cut the lock and get all the stolen property out of his house. (Brady is a quadriplegic and cannot get to the part of his house where Floreck locked the room.) At all three locations, officers found property stolen from the various storage units. At Brady's house, they found stolen property outside a window, in an unlocked closet, and in the locked room.

Floreck moved to suppress the evidence that the officers found in the locked room at Brady's house. The court denied the motion, ruling that Floreck lacked standing to challenge the search and that, in any event, Brady consented to the search.

At trial, Mazza testified that she alone committed the burglaries. She admitted making certain statements on the tape but said she had lied; she said she could not remember other statements on the tape. The court ruled that Mazza was unavailable as a witness and admitted the taped statement as substantive evidence.

Another witness, Gabe Mitchell, testified that both Floreck and Mazza told him that Floreck stole the property and that Floreck showed some of it to him. Dawn Bergman, Floreck's live-in girl friend, testified that Floreck brought the stolen property into their house.

The jury found Floreck guilty of seven counts of burglary and three counts of possession of stolen property.

## ANALYSIS

### I. Witness Unavailability and Prior Statement

■ Floreck argues that Mazza was not unavailable as a witness and, thus, her out-of-court statement to the police was inadmissible hearsay. A witness is unavailable when she persists in refusing to testify about the subject matter of her statement despite a court order to do so, or when she testifies to a lack of memory of the subject matter of her statement. ER 804(a)(2), (3). If the declarant is unavailable, her prior statement against interest is admissible. ER 804(b)(3). We review the trial court's decision to admit evidence for an abuse of discretion. *State v. Castellanos*, 132 Wn.2d 94, 97, 935 P.2d 1353 (1997).

#### A. Unavailability

■ Mazza testified that she did not remember telling the officers much of what the tape contained. But she did not claim a memory loss of the burglaries; she described the burglaries and said that she had committed them alone. And the rule requires the witness to have no memory as to the *subject matter* of the statement. ER 804(a)(3). The subject matter of her statement was the burglaries. Because Mazza testified about the burglaries, she was available as a witness. The State was entitled to question her about the memory lapse and to impeach her with the taped statement. ER 607, 613. It did so. But the court erred in admitting her taped statement as *substantive evidence*.

#### B. ER 803

■ The State argues that even if Mazza's statement was inadmissible under ER 804, it could come in under ER 803(a)(5). ER 803(a)(5) allows evidence "concerning a matter about which a witness once had knowledge but now has insufficient recollection" to testify fully. This rule does not apply here. Mazza could recall the burglaries but claimed that she acted alone. The State's supporting case is distinguishable. In *Alvarado*, the court found it important that the declarant did not disavow his prior statement. *State v.*

*Alvarado,* 89 Wn. App. 543, 552, 949 P.2d 831 (1998). Here, Mazza specifically said that her prior statement was a lie.

■■ In conclusion, the court erred in admitting Mazza's taped statement as substantive evidence. An error in admitting evidence is nonconstitutional if the hearsay declarant and recipient testify and are cross-examined. *State v. Quigg,* 72 Wn. App. 828, 834, 866 P.2d 655 (1994). A nonconstitutional evidentiary error requires reversal "if the error, within reasonable probability, materially affected the outcome of the trial." *State v. Halstien,* 122 Wn.2d 109, 127, 857 P.2d 270 (1993). Here, the court itself suggested that the State would have a "difficult time" proving at least some of the burglary charges without Mazza's statement. Report of Proceedings at 365-66. The error was not harmless, and Floreck is entitled to a new trial.

## II. Sufficiency of the Evidence

But Floreck contends that the evidence, even with Mazza's statement, was insufficient to support all seven burglary convictions. A person is guilty of burglary in the second degree if he enters or remains unlawfully in a building with intent to commit a crime against a person or property therein. RCW 9A.52.030. If the evidence is insufficient to support the convictions, Floreck is entitled to dismissal with prejudice. *State v. Anderson,* 96 Wn.2d 739, 742, 638 P.2d 1205 (1982).

■ A party who challenges the sufficiency of the evidence admits the truth of the State's evidence and all reasonable inferences from the evidence. *State v. Salinas,* 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Thus, we review such a challenge by asking whether, considering the evidence in the light most favorable to the State, the jury could have found guilt beyond a reasonable doubt. *Salinas,* 119 Wn.2d at 201. Circumstantial evidence is as reliable as direct evidence. *State v. Delmarter,* 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We do not review the jury's credibility determinations. *State v. Camarillo,* 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

Mazza admitted to Mitchell that she and Floreck had burglarized some storage units. Mitchell saw stolen property in Floreck's room at Brady's house. Floreck bragged to Mitchell about the stolen property and said that he (Floreck) had stolen it. Bergman, Floreck's girl friend, testified that Floreck brought some of the stolen property to their house. She showed the property to Detective Quantz and other officers, who identified it as property taken from some of the storage units. Floreck also told Mitchell that some of the stolen property in the house was his.

Officer May testified that much of the property recovered from Floreck's home was later identified as property stolen from various (specific) storage lockers. Officers also recovered storage unit property from the locked room in Brady's house and in Floreck's truck. This evidence, even without Mazza's statement implicating Floreck, is sufficient to support the jury verdicts.

## III. Warrantless, Consensual Search

The State maintains that Floreck lacks standing to challenge the locked room search at Brady's home. We need not decide the issue, however, because, even if Floreck has standing, his argument that the search was illegal fails.

■■ Floreck contends that Brady had no authority to consent to the warrantless search of his room. Even if Brady could authorize the search, Floreck insists that his consent was invalid. The State must establish that the warrantless search was valid. *State v. Mathe*, 102 Wn.2d 537, 540-41, 688 P.2d 859 (1984). A warrantless search is valid if a person with authority consents to it. *Mathe*, 102 Wn.2d at 541.

■■ The trial court found that Brady had either exclusive control or common authority over the locked room in his house. We review conclusions of law de novo, but the conclusions "carry great significance for a reviewing court." *State v. Ozuna*, 80 Wn. App. 684, 691, 911 P.2d 395 (1996) (citation omitted). Common authority is the " 'mutual use of

the property by persons generally having joint access or control for most purposes, so that it is *reasonable to recognize that any of the co-inhabitants has the right to permit the inspection* in his own right.' " *Mathe*, 102 Wn.2d at 543 (quoting *United States v. Matlock*, 415 U.S. 164, 171 n.7, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974)). The common authority doctrine also requires that Floreck assumed the risk that Brady might allow a search.[1] *Mathe*, 102 Wn.2d at 543.

Although Brady, a quadriplegic, had difficulty getting to all parts of the house, there is no evidence that he withdrew his right to do so. He expressed surprise that Floreck had put a lock on the door. And he asked the police to cut the lock.

Moreover, Floreck and Brady had no understanding that Floreck could lock and use the room with some degree of privacy. Without this, Floreck assumed the risk that Brady would allow the room to be searched. Floreck simply put a lock on the room without Brady's consent or permission. This is not sufficient to show that Brady gave up control of the room. And if Brady still had control of the room, Floreck assumed the risk that Brady would consent to its search.

▉ Finally, Floreck points to *Ferrier*'s holding that when officers ask for consent to search, they must advise the person that he may refuse. *State v. Ferrier*, 136 Wn.2d 103, 115, 960 P.2d 927 (1998). But while Floreck is correct about the law, *Ferrier* is not controlling here. Brady consented to the search, and the relevant inquiry is whether his consent was valid. Floreck cannot claim Brady's rights for him. *See State v. Goucher*, 124 Wn.2d 778, 787, 881 P.2d 210 (1994) (Fourth Amendment rights are personal rights and cannot be vicariously asserted). Brady does not assert

---

[1] Cases like this one, in which only one cohabitant is present and consents, differ from cases in which both cohabitants are present, but only one consents. In the latter type of case, the consent may be valid only as to the consenting cohabitant, *State v. Walker*, 136 Wn.2d 678, 965 P.2d 1079 (1998); or the court may focus on whether the consent allowed police into an area where visitors are customarily received, like the living room, or a more private area, like the bedroom. *State v. Hoggatt*, 108 Wn. App. 257, 267-68, 30 P.3d 488 (2001).

that his privacy was violated or that his consent was invalid.

In conclusion, the search of Brady's locked room was legal and the court did not err in denying Floreck's motion to suppress. We affirm the suppression hearing findings and conclusions but reverse and remand for new trial because the court erred in admitting Mazza's taped statement.

SEINFELD and BRIDGEWATER, JJ., concur.