[No. 34410-2-I.   Division One.   November 25, 1996.]

THE STATE OF WASHINGTON, *Respondent*, v. LORREN E. DANA, *Appellant*.

*Douglas J. Ende* and *Ende, Subin & Philip*; and *Jonathan T. Stier* and *Nielsen & Acosta*, for appellant.

*James H. Krider, Prosecuting Attorney,* and *Seth Aaron Fine, Deputy,* for respondent.

Cox, J. — Lorren Dana appeals his judgment and sentence for two counts of luring a child in violation of RCW 9A.40.090. We hold that the luring statute is not void for vagueness, is not unconstitutionally overbroad, and does not exceed the scope of the State's police power. We also hold that there was sufficient evidence to support Dana's conviction. Accordingly, we affirm.

In October 1993, Dana stopped his car in Edmonds near a McDonald's restaurant and spoke to two girls, A.K. and C.F. They were 12 and 11 years old, respectively. Dana and the girls had never met before.

He first mumbled something that they could not understand. The girls testified at trial that he then asked them if they would like to get into his car. The girls saw that he was wearing a leather jacket, a gold chain around his neck, and no shirt. C.F. testified that she saw that Dana was also wearing only a red jockstrap pulled over to one side, partially exposing his genitals. At trial, she confirmed that a pair of red bikini underpants that police obtained during a search of Dana's residence closely resembled what Dana was wearing during their encounter. A.K. was unable to see what Dana was wearing below his waist.

When Dana asked them to get into his car, C.F. was so

shocked that she dropped the french fries she had bought at the nearby McDonald's. Both girls then moved away from the car and returned to C.F.'s home to notify their parents about the incident.

Dana testified at trial that he had spoken to the girls to ask directions to the nearby Farmers Insurance Agency. He denied that he had asked them to get into his car or that he had exposed his genitals to them.

The State charged Dana with two counts of luring a child in violation of RCW 9A.40.090. Dana waived his right to a jury trial. The trial court convicted him on both counts.

Dana appeals.

## I

### Void for Vagueness

Dana contends that the luring statute is unconstitutional because it is facially void for vagueness. We disagree.

Due process under the Fourteenth Amendment of the United States Constitution and article I, section 3 of our state constitution requires that statutes give citizens fair warning of prohibited conduct and protect them from "arbitrary, ad hoc, or discriminatory law enforcement."[1] When a statute implicates the First Amendment right to free speech, a criminal defendant may bring a facial vagueness challenge.[2] Such a statute is void for vagueness "if either: (1) the statute 'does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed'; or (2) the statute 'does not provide ascertainable standards of guilt to protect against arbitrary enforcement'."[3] The language of

---

[1] *State v. Halstien*, 122 Wn.2d 109, 117, 857 P.2d 270 (1993).

[2] *Halstien*, 122 Wn.2d at 117.

[3] *Halstien*, 122 Wn.2d at 117 (citations omitted).

the statute must be understandable to "a person of ordinary intelligence."[4] Where a statute fails to define a term, this court will give the term its plain and ordinary meaning.[5] We may ascertain that meaning from a dictionary.[6] Appellate courts have the duty to interpret statutes so as to uphold their constitutionality.[7] A party bringing a constitutional challenge to a statute bears the burden of proof beyond a reasonable doubt.[8]

The State prosecuted Dana under former RCW 9A.40.090,[9] which provided:

A person commits the crime of luring if the person:

(1)(a) Orders, lures, or attempts to lure a minor or developmentally disabled person into a structure that is obscured from or inaccessible to the public or into a motor vehicle;

(b) Does not have the consent of the minor's parent or guardian or the developmentally disabled person's guardian; and

(c) Is unknown to the child or developmentally disabled person.

(2) It is a defense to luring, which the defendant must prove by a preponderance of the evidence, that the defendant's actions were reasonable under the circumstances and the defendant did not have any intent to harm the health, safety, or welfare of the minor or developmentally disabled person.

(3) For purposes of this section:

(a) "Minor" means a person under the age of sixteen;

---

[4]*City of Spokane v. Fischer*, 110 Wn.2d 541, 543, 754 P.2d 1241 (1988).

[5]*Fischer*, 110 Wn.2d at 543.

[6]*American Legion Post 32 v. City of Walla Walla*, 116 Wn.2d 1, 8, 802 P.2d 784 (1991).

[7]*Halstien*, 122 Wn.2d at 123.

[8]*Halstien*, 122 Wn.2d at 118.

[9]RCW 9A.40.090(1) was amended in 1995 to read, in part (1), "any area or structure," rather than "a structure" alone.

(b) "Developmentally disabled person" means a person with a developmental disability as defined in RCW 71A.10.020.

(4) Luring is a class C felony.

The statute does not define "lure" or "luring." Dana claims that the word "lure" provides no notice of what conduct is unlawful and no standards to prevent arbitrary enforcement.

THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE[10] defines the verb "lure" as "[t]o attract by wiles or temptation; entice." Immediately following this definition is a list of synonyms and an explanatory note indicating a connotation of peril: "These verbs ['lure' and its synonyms] mean to lead or attempt to lead into a wrong or foolish course, as of action."[11]

We hold that the word "lure" in this statute is not void for vagueness. It is sufficiently definite to inform a person of ordinary intelligence of what conduct the statute proscribes. It is true that the statute does not define the word "lure." But a commonly understood use of the word that is stated in the dictionary is to "entice." Moreover, the connotation of the word "lure" amplifies that meaning by implying that one who lures another leads that person into a course of action that is wrong or foolish under the circumstances. We think it is plain that the use of the word "lure" in this statute is intended to prohibit a defined class of persons (one unknown to the minor or developmentally disabled person and without the consent of the minor's parents or the disabled person's guardian) from enticing or attempting to entice a protected person into a specific place (here, a car). This combination of the connotation of the word "lure" and the statutory elements of the offense is sufficient to give fair notice of what conduct is proscribed.

In addition, the location of the luring statute in the

---

[10] 1071 (3d ed. 1992).

[11] AMERICAN HERITAGE DICTIONARY at 1071.

criminal code clarifies its meaning. When evaluating constitutional vagueness challenges, we "look at the whole statute in the context in which it appears in the criminal code."[12] In *Schimmelpfennig*, our Supreme Court noted that the statute prohibiting communication with a minor for immoral purposes was the first section of a chapter that proscribed "conduct relating to exposure of the person, prostitution, and certain indecent liberties."[13] Accordingly, the structure of the chapter made clear that the Legislature intended the statute in question to prohibit communication with minors for the purpose of sexual misconduct.[14]

Similar analysis applies to the luring statute. Its location in Chapter 9A.40, entitled, "Kidnapping, Unlawful Imprisonment, and Custodial Interference," adds further clarity to the wording of the statute. Like the second degree attempted kidnapping statute upheld against a vagueness attack in *State v. Billups*,[15] the luring statute targets conduct that falls short of the force necessary to constitute abduction.[16] Because of the vulnerability of children and developmentally disabled persons, strangers are prohibited from luring them out of public view. The statute gives clear notice of proscribed conduct.

For the same reasons, we also reject Dana's argument that the statute creates a risk of arbitrary enforcement. The connotation of the word and the other stated elements of the offense—a minor or developmentally disabled person, either of whom does not know the accused, and the specific location—serve to make the meaning of the statute clear.

Finally, we reject Dana's argument that the victim

[12]*State v. Schimmelpfennig*, 92 Wn.2d 95, 102, 594 P.2d 442 (1979).

[13]*Schimmelpfennig*, 92 Wn.2d at 102.

[14]*Schimmelpfennig*, 92 Wn.2d at 102.

[15]62 Wn. App. 122, 813 P.2d 149 (1991).

[16]*See* RCW 9A.40.010(2) (defining "abduct": "to restrain a person by either (a) secreting or holding him . . . or (b) using or threatening to use deadly force").

must find the enticement attractive. The statute expressly criminalizes attempts to lure.[17] Here, the trial court expressly considered Dana's conduct in exposing himself to the girls—conduct they apparently found upsetting—as well as the words he spoke. Dana fails to show that there is a risk of arbitrary enforcement of the statute.

## II

## Overbreadth

Dana also argues that the luring statute is facially overbroad because it impermissibly burdens constitutionally protected speech. We disagree.

Our Supreme Court has stated that "[a] law is overbroad if it sweeps within its prohibitions free speech activities protected under the First Amendment."[18] Because of the important rights that the First Amendment protects, a defendant may make a facial challenge to a criminal statute.[19] Such statutes may be facially overbroad if they " 'make unlawful a substantial amount of constitutionally protected conduct . . . even if they also have legitimate application.' "[20]

The first issue in overbreadth analysis is whether the statute reaches constitutionally protected speech or expression.[21] If so, the next question is whether the amount of protected conduct the statute reaches is " 'real and substantial' . . . in contrast to the statute's

---

[17]RCW 9A.40.090(1)(a). *See State v. Workman*, 90 Wn.2d 443, 449, 584 P.2d 382 (1978) (defining "attempt" as taking a substantial step toward committing a crime).

[18]*Halstien*, 122 Wn.2d at 122.

[19]*State v. Motherwell*, 114 Wn.2d 353, 370, 788 P.2d 1066 (1990).

[20]*City of Seattle v. Huff*, 111 Wn.2d 923, 925, 767 P.2d 572 (1989) (quoting *City of Houston v. Hill*, 482 U.S. 451, 459, 107 S. Ct. 2052, 96 L. Ed. 2d 398 (1987)).

[21]*Halstien*, 122 Wn.2d at 122-23.

plainly legitimate sweep."[22] Even when a statute literally sweeps too broadly, a court will not invalidate it unless the court cannot place a sufficiently limited construction on it to render it constitutional.[23] Appellate courts have the duty to interpret statutes so as to uphold their constitutionality.[24] A party bringing a constitutional challenge to a statute bears the burden of proof beyond a reasonable doubt.[25]

Here, Dana challenges the statute's restriction on speech to minors, so he has raised a First Amendment issue. As to the second analytic step, the plainly legitimate sweep of the statute is large: the protection of minors under 16 and the developmentally disabled. The impact on protected speech is minimal because a mere invitation, as noted above, is not sufficient. In order to constitute a lure in violation of the statute, the invitation must include some other enticement or conduct constituting an enticement (or attempted enticement).

Dana argues that the statute criminalizes any offer of a ride by an adult to a minor and is therefore overbroad. In support, he cites *State v. Billups*,[26] where this court held that combining the criminal attempt and second degree kidnapping statutes was not overbroad. This court reasoned that because the kidnapping statute required the State to prove an intent to abduct, the statutes together were thereby saved from overbreadth.[27] Dana therefore contends that because the luring statute has no intent element,[28] it is overbroad under *Billups*, since any invitation is proscribed. However, luring and inviting are not the

---

[22]122 Wn.2d at 123 (citations omitted).

[23]122 Wn.2d at 123.

[24]122 Wn.2d at 123.

[25]122 Wn.2d at 118.

[26]62 Wn. App. at 128.

[27]62 Wn. App. at 128.

[28]*See* SENATE COMM. ON LAW & JUSTICE, REPORT ON ESSB 5186, at 2, Reg. Sess. (1993) (stating that the "crime of luring is made a crime of strict liability").

same. Luring requires something more than an invitation. The enticement accompanying the invitation, be it conduct or words, for example, sufficiently narrows the scope of the statute in relation to its plainly legitimate sweep. In any event, even if this statute results in strangers failing to offer children rides home in the rain—avoiding getting wet being the inducement—the risk to children from contact with strangers outweighs any perceived harm.

Dana also suggests that the affirmative defense available to him requires him to negate an implied intent element in the statute, in violation of his due process rights. He is mistaken.

Due process requires the State to prove every element of a crime beyond a reasonable doubt.[29] Thus, if a defense to a crime negates an element of the crime, such as intent, the State's burden includes proving the absence of that defense.[30] For example, the so-called "lawfulness" element of self-defense negates the intent elements of murder, assault, and manslaughter.[31] As a result, the State must prove the absence of self-defense for those crimes.[32] But where there is merely conceptual overlap between an element of the offense and a defense, the burden does not shift to the State to disprove the defense.[33] Accordingly, the *Camara* court concluded that even though there was a conceptual overlap between the consent defense to rape and the element of forcible compulsion, the State was not required to prove absence of consent to prove compulsion.[34]

The luring statute provides, "It is a defense to luring, which the defendant must prove by a preponderance of the evidence, that the defendant's actions were reason-

---

[29]*State v. Camara*, 113 Wn.2d 631, 638, 781 P.2d 483 (1989) (citing *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970)).

[30]*Camara*, 113 Wn.2d at 638-39.

[31]*Camara*, 113 Wn.2d at 639.

[32]*Camara*, 113 Wn.2d at 639.

[33]*Camara*, 113 Wn.2d at 639-40.

[34]*Camara*, 113 Wn.2d at 640.

able under the circumstances and the defendant did not have any intent to harm" the child or developmentally disabled person.[35] Dana argues that, in order to save the luring statute from overbreadth, we must imply an element of criminal intent. Thus, he claims that the Legislature cannot place on him the burden of disproving his intent without violating his due process rights. He is mistaken. Although one might infer criminal intent from exposure of one's genitals, it is unnecessary to do so to satisfy the elements of luring. The conduct alone is sufficient to constitute an enticement, regardless of its effect. Because there is no intent element to luring, the *Camara* negation analysis does not apply.

We hold that the luring statute is not unconstitutionally overbroad.

## III

### Police Power

Dana next argues that the luring statute is unconstitutional because it constitutes an unreasonable exercise of the State's police power. We disagree.

Article 1, section 1 of our state constitution authorizes the Legislature to "prescribe laws to promote the health, peace, safety, and general welfare of the people of Washington."[36] Our Supreme Court has stated that "[a] statute is a valid exercise of police power if it (1) tends to correct some evil or promote some interest of the State, and (2) bears a reasonable and substantial relationship to accomplishing its purpose."[37] A party challenging a statute as outside the police power bears the burden of showing that the statute is "clearly and plainly unreason-

[35]RCW 9A.40.090(2).

[36]*State v. Brayman,* 110 Wn.2d 183, 192-93, 751 P.2d 294 (1988).

[37]110 Wn.2d at 193.

able."[38] The State has a legitimate interest in the protection of children.[39]

The House Bill Report of the House Committee on Judiciary regarding the luring statute indicates that "[s]ome police officers have reported that the police receive numerous reports that strangers have attempted to order or entice children into cars." A Pennsylvania appellate court, upholding a similar statute, stated:

> It is a perfectly reasonable and efficacious enactment for the legislature to declare that an adult should not, under penalty of law, invite a child (without the parents['] consent which may be implied) into his car. Viewing this crime as a threshold prophylactic rule for the terrible crime of kidnapping, we conclude that it is a legitimate exercise of the legislature's discretion, to prohibit persons from offering rides to children under any invitational pretext.[40]

Likewise, it is not clearly and plainly unreasonable for our Legislature to conclude that a stranger's luring a child or a developmentally disabled person into a motor vehicle constitutes a danger worthy of prevention. Furthermore, our statute provides an affirmative defense that the defendant's conduct was reasonable or not intended to harm the alleged victim.[41] These statutory measures provide a sufficient nexus between an admitted harm and

---

[38]*City of Seattle v. Webster*, 115 Wn.2d 635, 645, 802 P.2d 1333 (1990), *cert. denied*, 500 U.S. 908 (1991).

[39]*City of Seattle v. Pullman*, 82 Wn.2d 794, 800, 514 P.2d 1059 (1973).

[40]*Commonwealth v. Figueroa*, 436 Pa. Super. 569, 648 A.2d 555, 558 (1994), *appeal denied*, 540 Pa. 578 (1995). Pennsylvania's luring statute provides:

"A person who lures a child into a motor vehicle without the consent, express or implied, of the child's parent or guardian, unless the circumstances reasonably indicate that the child is in need of assistance, commits a misdemeanor of the first degree."

18 PA. CONS. STAT. ANN. § 2910.

[41]RCW 9A.40.090(2).

the objective of preventing that harm. This is a valid exercise of the State's police power.

## IV

### Sufficiency of the Evidence

Dana argues that the State did not adduce sufficient evidence to convict him of luring a child. We disagree.

In appeals based on the sufficiency of the evidence, this court's inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime *beyond a reasonable doubt.*'"[42] A reviewing court "need not *itself* be convinced beyond a reasonable doubt."[43] For purposes of a challenge to the sufficiency of the evidence, the appellant admits the truth of the State's evidence and all inferences that can be reasonably drawn from it.[44]

Here, the trial court concluded that the combination of the invitation and the defendant's exposure of his genitals constituted luring for the purposes of the statute. The statute includes the act of attempting to lure. Thus, even though the girls were upset, rather than enticed, by Dana's exposure of his genitals when he invited them to get into the car, his conduct nevertheless fell within the prohibitions of the statute. We believe that a rational trier of fact could have found beyond a reasonable doubt that Dana attempted to lure A.K. and C.F. into his automobile.

We affirm the judgment and sentence.

---

[42]*State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).

[43]*State v. Jones*, 63 Wn. App. 703, 708, 821 P.2d 543, *review denied*, 118 Wn.2d 1028 (1992).

[44]*Jones*, 63 Wn. App. at 707-08.

GROSSE and WEBSTER, JJ., concur.

Reconsideration denied April 14, 1997.

Review denied at 133 Wn.2d 1021 (1997).