FILED
COURT OF APPEALS
DIVISION II

2013 NOV 19 AM 8:39

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43032-1-II |
| Respondent, | |
| v. | |
| MICHAEL GEORGE RICHEY, | UNPUBLISHED OPINION |
| Appellant. | |

QUINN-BRINTNALL, J. — Michael George Richey appeals his conviction for failing to register as a sex offender. He argues that sufficient evidence does not support his conviction and that his sentence exceeded the statutory maximum. We affirm the conviction on the ground that sufficient evidence supports Richey's conviction, but reverse the sentence and remand for resentencing.[1]

## FACTS

Due to a 1994 conviction for second degree child rape, Richey has a duty to register as a sex offender. On May 3, 2010, Richey registered his address as 2011 217th Street Court East, Spanaway, Washington, with the Pierce County Sheriff's Department.

On May 7, 2010, the sheriff's department sent two deputies to verify the address. With the permission of Hollie Moss, a resident, and Christina Lawson, Moss's daughter, the officers

---

[1] A commissioner of this court initially considered this appeal as a motion on the merits under RAP 18.14 and then referred it to a panel of judges.

entered the trailer located at the registered address. They inspected Richey's bedroom and saw a bare mattress leaning against a wall and a few stacked boxes. They returned a few weeks later, but no one was home. They classified Richey as "absconded." Clerk's Papers (CP) at 10. The State charged Richey with failing to register as a sex offender "by either failing to reside at the registered address or by failing to comply with notification requirements regarding a change of address." CP at 3.

Richey waived his right to a jury trial. During the bench trial, various witnesses testified about Richey's connection to the trailer. Harold Lidren, Richey's brother, stated that he had dinner with Richey at the trailer on the evening of May 12, 2010. Benjamin Workman, Richey's friend, said that he helped Richey move his belongings out of the bedroom to a storage shed on May 6, 2010, because the bedroom flooded. Patrick Sorensen, another friend of Richey's, testified that on a few occasions he would drop Richey off and pick him up at the trailer. Sorensen helped Richey move out of the trailer in late summer 2010, but they only moved items out of a separate storage unit on the property.

Moss also testified. She recalled that Richey stayed at her trailer about four nights per week. Richey paid her a total $200 for rent for the several months that he lived in the trailer. One time, Richey's mother also gave Moss $100. Richey corroborated that he did not stay at the trailer every night. Because it took him two and a half hours to get from the trailer to his rehabilitation and therapy appointments, he would regularly stay at his mother's house or with Tom Jones, another friend. Richey added that the reason the officers saw the mattress stripped and leaning against the wall on May 7 was because he needed to let the mattress dry after the flood in his bedroom. When he did stay at the trailer, he slept in the living room. Richey used

the trailer as his mailing address and stored personal belongings in a storage shed on the property.

The trial court convicted Richey of failing to register as a sex offender in violation of former RCW 9A.44.130 (2010).[2] It found that Richey "stayed at the trailer maybe four nights per week" and that he stayed with his mother or Jones or other unknown locations "in order to avoid making the lengthy trip to his appointments." CP at 11-12. It added that Richey "did know where he would stay from one night to the next." CP at 12. It concluded that Richey lacked a "fixed residence" between May 7 and July 29, 2010, but failed to register as a transient sex offender. CP at 14. It sentenced Richey to 43 months in custody and 0 to 36 months of community custody. Richey appeals.

## ANALYSIS

SUFFICIENCY OF THE EVIDENCE

"A challenge to the sufficiency of the evidence presented at a bench trial requires us to review the trial court's findings of fact and conclusions of law to determine whether substantial evidence supports the challenged findings and whether the findings support the conclusions." *State v. Homan*, 172 Wn. App. 488, 490, 290 P.3d 1041 (2012) (citing *State v. Stevenson*, 128 Wn. App. 179, 193, 114 P.3d 699 (2005)), *review granted*, 177 Wn.2d 1022 (2013). Evidence is substantial if it is sufficient to convince a fair-minded, rational person of the truth of the finding. *State v. McEnry*, 124 Wn. App. 918, 924, 103 P.3d 848 (2004). Unchallenged findings of fact

---

[2] Former RCW 9A.44.130 provides in part,

> (1)(a) Any adult or juvenile residing whether or not the person has a fixed residence . . . who has been found to have committed or has been convicted of any sex offense . . . shall register with the county sheriff for the county of the person's residence.

3

are verities on appeal. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). A claim of insufficiency admits the truth of the State's evidence and all inferences that can reasonably be drawn from them. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We review the trial court's conclusions of law de novo.[3] *Homan*, 172 Wn. App. at 490.

Richey specifically challenges findings of fact XXIX and XXXII. As an initial matter, Richey argues that the evidence does not support the finding of fact XXXII and that Richey "did not know where he would stay from one night to the next." Br. of Appellant at 8. The trial court, however, ruled that Richey "did know" where he would stay. CP at 12. Accordingly, we do not address this challenge further.

Richey also argues that substantial evidence does not support finding of fact XXIX, that "[t]he defendant did not take meals at the trailer." CP at 11. We agree that a strictly technical reading of the finding of fact is not supported by substantial evidence. Richey's brother testified that he ate a single meal with Richey at the trailer and Moss testified that Richey ate at the trailer "[a] little." 2 Report of Proceedings at 148. Therefore, if the trial court's finding of fact is read strictly to mean that Richey never ate a meal at the trailer, it would be contrary to the testimony of witnesses who the trial court specifically found to be credible, and not supported by

---

[3] We note that the dissent applies the rule of lenity to reach the opposite conclusion. However, the rule of lenity is a rule of statutory construction that applies to situations where more than one interpretation can be drawn from the wording of a statute. *State v. Sneeden*, 149 Wn.2d 914, 922, 73 P.3d 995 (2003). In this case, we are not faced with competing interpretations of the meaning of fixed residence. Rather, we must decide whether the facts, as found by the trial court, are sufficient to support the trial court's conclusion that Richey failed to register as a sex offender as required by former RCW 9A.44.130. It is well settled law that when determining the sufficiency of the evidence, a reviewing court makes all reasonable inferences in favor of the State and the verdict. *Salinas*, 119 Wn.2d at 201. Although, as the dissent articulates, there are two inferences that can be made from the trial court's findings of fact, the sufficiency of the evidence standard requires us to accept the inferences that favor the verdict.

substantial evidence. We do not consider this particular finding, but the remaining, unchallenged, findings of fact support the trial court's conclusions.

Under former RCW 9A.44.130(5)(a), a sex offender who is required to register must give the county sheriff's office written notice within three business days of changing his residence. If the sex offender lacks a fixed residence he is required to notify the sheriff's office within three business days and report to the sheriff's office on a weekly basis. Former RCW 9A.44.130(6). Here, the trial court concluded that Richey lacked a fixed residence and, thus, violated former RCW 9A.44.130(6) by failing to notify the sheriff's office.

Richey relies on *State v. Stratton*, 130 Wn. App. 760, 124 P.3d 660 (2005), to argue that the trailer was his fixed residence. In *Stratton*, this court defined residence as

> "the act . . . of abiding or dwelling in a *place* for some time: an act of making one's home in a *place* . . .; the *place* where one actually lives or has his home distinguished from his technical domicile; . . . a temporary or permanent dwelling *place*, abode, or habitation to which one intends to return as distinguished from a place of temporary sojourn or transient visit . . .; a *building* used as a home."

130 Wn. App. at 765 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, at 1931 (1969)). This court also defined "fixed" as, among other things, "'not subject to change or fluctuation.'" *Stratton*, 130 Wn. App. at 765 (quoting WEBSTER'S, at 861. Under the definition of fixed residence adopted by this court in *Stratton*, the trailer at issue here was neither fixed nor Richey's residence.[4]

First, Richey's living arrangement at the trailer was not fixed. He stayed at the trailer for, at most, four nights a week. The remaining nights, Richey moved between his mother's home

---

[4] We note that in 2011, the legislature codified a definition of "fixed residence" for the purposes of failure to register offenses which is different than the definition established by this court in *Stratton*. LAWS OF 2011, ch. 337, § 2. However, because Richey's offense occurred in 2010, we apply the *Stratton* definition of fixed residence rather than the new statutory definition.

and the homes of other friends. Because the place where Richey stayed was regularly changing, his address was not fixed.

Second, the trailer was not Richey's residence. Richey argues that because (1) he kept personal belongings at the trailer, (2) received mail at the trailer, and (3) intended to return to the trailer, it was his residence. He analogizes to *Stratton*, in which we determined that although the defendant lived in his car in the driveway outside of the house, the address was his fixed residence because he received mail and telephone service there, and intended to return to the house. 130 Wn. App. at 766. But *Stratton* is distinguishable.

In *Stratton*, the defendant returned to the address every night, could easily be contacted by law enforcement at the address, and the address was not subject to change because he had no definite departure date or alternative place to stay. 130 Wn. App. at 766. Here, Richey did not return to the trailer every night, and he regularly stayed at alternative addresses. Because Richey was at the trailer sporadically it would be more difficult for law enforcement to locate him at the trailer which defeats the purpose of the registration requirement. *See State v. Vanderpool*, 99 Wn. App. 709, 712, 995 P.2d 104 (purpose of sex offender registration is "to allow law enforcement agencies to protect their communities, conduct investigations and quickly apprehend sex offenders"), *reviewed denied*, 141 Wn.2d 1017 (2000). Therefore, the trailer was not Richey's residence.

Because the trailer was not Richey's fixed residence, he failed to comply with the registration requirements by failing to notify law enforcement of his change in address under former RCW 9A.44.130 and the trial court's conclusions of law were correct. We affirm Richey's conviction.

No. 43032-1-II

SENTENCE

Richey also appeals his 0 to 36 month term of community custody, arguing that the combination of his indefinite community custody term and his term of 43 months of confinement exceeds the 60-month statutory maximum punishment for his crime in violation of RCW 9.94A.701(9),[5] and that he is entitled to be resentenced to reduce his term of community custody. *State v. Boyd*, 174 Wn.2d 470, 472-73, 275 P.3d 321 (2012).

The State concedes Richey is entitled to be resentenced because he was "potentially sentenced past the statutory maximum of 60 months." Br. of Resp't at 15. We accept the State's concession and remand for resentencing under *Boyd*.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

QUINN-BRINTNALL, J.

I concur:

HUNT, P.J.

---

[5] RCW 9.94A.701 provides,

(9) The term of community custody specified by this section shall be reduced by the court whenever an offender's standard range term of confinement in combination with the term of community custody exceeds the statutory maximum for the crime as provided in RCW 9A.20.021.

7

No. 43032-1-II

BJORGEN, J. (dissenting) — As the majority states, the central issue in this appeal is whether substantial evidence supports the trial court's finding that Michael Richey lacked a fixed residence between May 7 and July 29, 2010. More specifically, the question is whether sufficient evidence supports the court's determination that the Spanaway address was not Richey's fixed residence.

A "fixed residence" requires:

> "the act . . . of abiding or dwelling in a place for some time: an act of making one's home in a place . . . ; the place where one actually lives or has his home distinguished from his technical domicile; . . . a temporary or permanent dwelling place, abode, or habitation to which one intends to return as distinguished from a place of temporary sojourn or transient visit . . . ; a building used as a home."

*State v. Stratton*, 130 Wn. App. 760, 765, 124 P.3d 660 (2005) (quoting *Webster's Third New International Dictionary* 1931 (1969)) (emphasis omitted). In determining whether a location serves as a "fixed residence" under these principles, we must apply the rule of lenity and interpret the statute in Richey's favor absent contrary legislative intent. *Stratton*, 130 Wn. App. at 766.

In *Stratton*, the defendant moved out of the home he was purchasing after defaulting on the payments. Although Stratton no longer entered the house or, presumably, stored belongings in it, he returned there every night, received his mail and phone messages there, and slept in his car outside the home. We held that under these circumstances the State had failed to prove that the home was not the defendant's fixed residence. *Stratton*, 130 Wn. App. at 762.

A comparison of Richey's situation with the facts of *Stratton* could serve an argument either way. On one hand, Stratton was more anchored in his location because he returned to it every night; on the other hand, Richey was more securely rooted because he slept and stored

8

belongings inside the residence. More profitable is the evaluation of Richey's circumstances directly under the definition of "fixed residence" found in *Stratton*.

The state of Richey's bedroom on May 7, 2010, when the officers first visited, suggested that he no longer lived there: a bare mattress was propped against the wall and a few boxes were stacked on the floor. However, Workman's testimony, found credible by the court, was that Richey's room had flooded the day before and that Richey had moved his possessions as a result. Richey also testified that when the room was flooded, he slept in the living room. This evidence shows a legitimate reason, consistent with fixed residency, why the room looked vacant when the officers first visited.

Turning to Richey's periodic absences,[5] there is no easy litmus signaling how many weekly absences is inconsistent with fixed residency. Instead, the circumstances of the absences must be considered in applying the definition in *Stratton*. Credible evidence showed that Richey spent about four nights per week at the trailer and the other three nights at his mother's or Jones's home because it took two-and-a-half hours to get to his therapy/rehabilitation appointments from the trailer. These circumstances show a legitimate reason for his absence each week, consistent with fixed residency.

Finally, the lodestar in statutory construction is legislative intent. *See Lacey Nursing Ctr. v. Dep't of Revenue*, 128 Wn.2d 40, 53, 905 P.2d 338 (1995). The purpose of the sex offender registration requirement is to provide law enforcement an address where they can contact an offender. *Stratton*, 130 Wn. App. at 765. Credible evidence showed that Richey stored his

---

[5] The State relies on *State v. Pray* to argue that Richey was required to re-register at the addresses he used temporarily. 96 Wn. App. 25, 980 P.2d 240 (1999). Although *Pray* held that even the temporary use of an address can amount to establishing a fixed residence, in *Pray*, the court held that offender "abandoned" his registered permanent address before moving to a temporary address. 96 Wn. App. at 30. Here, Richey never abandoned the trailer.

9

belongings at the trailer, returned and slept there four nights per week, received mail there, met friends there, and had a legitimate reason, consistent with fixed residency, for his absences. Although his absences made it more difficult for law enforcement to contact him, an increase in difficulty is not the standard. Here, Richey was absent three nights a week for a regular, easily confirmable purpose. This pattern is wholly consistent with fixed residency and would allow law enforcement ample and reasonable opportunity to contact Richey. Deeming this to be a fixed residence is consistent with the statute's purpose.

Richey's living situation, as shown by credible, unrebutted evidence, was consistent with the central elements of *Stratton*'s definition of "fixed residence" and allowed the statute's purposes to be served. Therefore, sufficient evidence did not support Richey's conviction, and I would reverse.

BJORGEN, J.